Request of House of Representatives,
No. 5360.

OPINION OF THE JUSTICES.

Submitted April 12, 1965.
Answer returned April 21, 1965.

The following resolution was adopted by the House of Representatives March 31, 1965 and filed in this court on April 2, 1965:

"Whereas, at present there is a large disparity among the number of inhabitants in the various wards of the city of Nashua and in their representation in the city board of aldermen and other ward officials, and

"Whereas, there is now pending before the House of Representatives House Bill No. 420 to amend the charter of the city of Nashua by revising the ward boundaries of the city of Nashua so that each ward is equal in its number of inhabitants, and

"Whereas, there is a special committee in the House of Representatives to recommend legislation on apportionment of representatives among the towns, wards, and places of the state, and the committee has not yet reported to the house, and

"Whereas, Article 9, Part Second of the state constitution as amended in 1964 provides, in part, 'In making such apportionment, no town, ward or place shall be divided nor the boundaries thereof altered,' and

"Whereas, House Bill No. 420 proposes to alter the boundaries of the wards of the city of Nashua, and

"Whereas, a question has been raised concerning the constitutionality of House Bill No. 420 in that it alters the boundaries of the wards of the city of Nashua, now therefore, be it

"Resolved, that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"Does House Bill No. 420, An Act to revise the ward boundaries of the city of Nashua, violate the Constitution of New Hampshire with respect to Part Second, Article 9, or with respect to any other provision of the Constitution?

"If House Bill No. 420 passes the general court, may the Senate and House of Representatives be apportioned based upon the 1960 federal census figures for the new wards?

"Be it further resolved, that the speaker transmit seven copies of this resolution and of House Bill No. 420 to the clerk of the Supreme Court for consideration by the court."

The following answer was returned:

*To the House of Representatives:*

The Justices of the Supreme Court make the following reply to your request for advice with respect to House Bill No. 420:

The bill is entitled "An Act to revise the ward boundaries of the city of Nashua." It proposes to divide Nashua into nine wards, as it now is, but would change the present boundaries of these wards.

The amendment to Part II, *Art.* 9th of our Constitution, which bears directly on the question before us, was adopted at the November 1964 election. As amended the article reads as follows: "There shall be in the legislature of this state a house of representatives, biennially elected and founded on principles of equality, and representation therein shall be as equal as circumstances will admit. The whole number of representatives to be chosen from towns, wards, places, and representative districts thereof established hereunder, shall be not less than three hundred seventy-five or more than four hundred. As soon as possible after the convening of the next regular session of the legislature, and at the session in 1971, and every ten years thereafter, the legislature shall make an apportionment of representatives according to the last general census of the inhabitants of the state taken by authority of the United States or of this state. In making such apportionment, no town, ward or place shall be divided nor the boundaries thereof altered."

Since no State census has been taken, it is obvious the words

"the last general census of the inhabitants . . ." refer to the most recent Federal census which was taken in 1960.

It may be well to note here that for many years and since the amendment to Article 9th proposed by the Constitutional Convention of 1876, providing for a reapportionment to be taken according to "the last general census of the State," it has been the practice to make a periodic reapportionment every ten years, following each Federal census.

Prior to 1964 the last amendment to Article 9th was in 1942, at which time the relevant provision was changed to read thus: "In making such apportionment no town shall be divided, or the boundaries of the wards of any city so altered, as to increase the number of representatives to which such town or city may be entitled by the last preceding census." It will be noted that reference was here made to "the last preceding census."

At the Constitutional Convention in 1964, all efforts to amend Article 9th had been rejected when the Convention adjourned on June 10, 1964. However, on June 15 following, the United States Supreme Court decided the case of *Reynolds* v. *Sims,* 377 U. S. 533. By this decision, the Court held that both houses should be reapportioned on a population basis, but the Court added: "A State may legitimately desire to maintain the integrity of various political subdivisions, insofar as possible. . . . Valid considerations may underlie such aims." *Id.,* 578. Furthermore, it held that a decennial reapportionment would clearly meet the requirements for maintaining a reasonably current scheme of legislative representation. As a result of this decision the Convention was reconvened in a one-day session on July 8, 1964, and the 1964 amendment to Article 9th as previously quoted was proposed and accepted by the Convention, and thereafter adopted by vote of the people at the November 1964 election.

It is significant that the 1942 proviso forbade only such divisions or alterations as might increase the number of representatives from any town or city and did not forbid divisions or alterations for other purposes. The 1964 amendment also prohibited divisions and alterations "in making such apportionment."

We find that the policy of reapportionment every ten years following each Federal census, established in 1876, has been carried on generally since the 1942 amendment. While boundaries of city wards were changed at legislative sessions between

apportionments, none appears to have been changed, at least since 1931, at a "reapportionment" session of the Legislature, that is a session next following a decennial Federal census.

It seems obvious that "in making such apportionment," as the Legislature is about to provide for at this session, the 1964 amendment to Article 9th prohibits changing ward lines. The Legislature must make a reapportionment at the present session on the basis of the 1960 United States census, which shows the population of the wards according to existing ward lines. There is no authorized census of the new wards proposed by House Bill No. 420 upon which to base the reapportionment required at this session by Article 9th. It follows that there can be no revision of ward boundaries prior to the passage of the pending Reapportionment Act.

After a reapportionment has been adopted the session may then enact House Bill No. 420. It must, in that bill, subdivide equitably among the new Nashua wards the total number of Representatives allocated to Nashua under the 1965 Reapportionment Act. This would be similar to what was done in the Portsmouth ward line bill passed in 1957. See Laws 1957, c. 412, s. 13. The 1970 Federal census will be taken according to the new ward lines of Nashua as specified by House Bill No. 420. Then in the 1971 Apportionment Act, recognition will be given to the populations of each ward as redefined.

Adoption of House Bill No. 420 might in some cases change from one ward to another the residences of Representatives presently in office. To avoid disqualification of such Representatives under Part II, Article 14th of the Constitution prior to the expiration of their terms of office, it may be considered desirable to postpone until some appropriate date in 1966 the effective date of the establishment of the new ward lines for the purpose of determining the residence of any Representative presently in office.

The answer to your first question is that House Bill No. 420 if enacted now would violate the Constitution. However, if enacted in accordance with the requirements set forth in this opinion it would be constitutional.

The answer to your second question whether, if House Bill No. 420 passes, "may the Senate and House of Representatives be apportioned based upon the 1960 federal census for the new wards?" is no. The reasons for this are, first, because the official 1960 census does not cover the new wards. Second, House

Bill No. 420 must not become law until after the Reapportionment Act is passed. Third, apportionment "based upon . . . the new wards" would be in violation of Part II, Article 9th and Article 26th of the State Constitution.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

April 21, 1965.

*Marshall Cobleigh* for the bill.
*Richard F. Upton,* amicus curiae.