Rockingham
No. 92-446

CYNTHIA MCGOVERN & a.

v.

SECRETARY OF STATE

December 23, 1993

*Ford, Ford & Weaver*, of Portsmouth (*Mark F. Weaver* on the brief and orally), for the plaintiffs.

*Jeffrey R. Howard*, attorney general (*George Dana Bisbee*, deputy attorney general, on the brief and orally), for the defendant.

BROCK, C.J.   The plaintiffs, nine members of the New Hampshire House of Representatives elected from the Portsmouth districts, appeal an order of the Superior Court (*Gray*, J.) denying their petition for declaratory judgment concerning the constitutionality of apportionment legislation for the house of representatives.

The plaintiffs argue that the trial court (1) erred as a matter of law in holding that the house acted constitutionally in approving the apportionment of representatives to the Portsmouth/Newington districts without first taking a new general census or statutorily adjusting the existing census figures, and (2) erred in finding that the house did not base the above apportionment on an impermissible reduction in the census figures for Portsmouth/Newington. We find no error and affirm.

This case arises from apportionment legislation for the house of representatives. Subsequent to the legislation's enactment, the plaintiffs petitioned for injunctive relief and a declaration that the part of the apportionment plan pertaining to Rockingham County's representation in the house violated part II, articles 9 and 9-a of the New Hampshire Constitution. After a hearing, the court issued a preliminary order and denied the plaintiffs' request. All parties then stipulated to the documentary record below. After a hearing on the merits, consisting of arguments by counsel, the superior court made final its preliminary order and denied the plaintiffs' petition. The plaintiffs appeal.

We note the general rule that we will not disturb the trial court's findings of fact or rulings of law unless they are unsupported by the evidence or erroneous as a matter of law. *In re Certain Scholarship Funds*, 133 N.H. 227, 232, 575 A.2d 1325, 1328 (1990). Where, as here, the case was decided on a stipulated factual record, however, our standard of review is broadened. As all the documents are available for our perusal, the trial court was in no better position to decide the case than are we. *Masse v. Commercial Union Ins. Co.*, 136 N.H. 628, 632, 620 A.2d 1041, 1044 (1993). As the plaintiffs' arguments are closely intertwined, we address them together.

Part II, article 9 of the New Hampshire Constitution states:

"There shall be in the legislature of this state a house of representatives, biennially elected and founded on princi-

ples of equality, *and representation therein shall be as equal as circumstances will admit.* The *whole number* of representatives to be chosen from the towns, wards, places, and representative districts thereof established hereunder, shall be not less than three hundred seventy-five or more than four hundred. As soon as possible after the convening of the next regular session of the legislature, and at the session in 1971, and every ten years thereafter, *the legislature shall make an apportionment of representatives according to the last general census of the inhabitants of the state* taken by authority of the United States or of this state. In making such apportionment, no town, ward or place shall be divided nor the boundaries thereof altered."

(Emphasis added.) The apportionment plan in question was embodied in House Bill 591 and House Bill 1005. Both were passed pursuant to the constitutional mandate of part II, article 9. Enacted as chapters 130 and 183 of the Laws of 1992, the legislation repealed and reenacted RSA 662:5. The reenacted statute apportioned thirteen representatives to the districts encompassing Salem and Windham, and nine representatives to the districts encompassing Portsmouth and Newington. *See* RSA 662:5, VIII (Supp. 1992).

The last general census in 1990 showed a State population of 1,109,252. Divided by the maximum number of representatives allowed (400), that number yielded 2773.13 as the ideal population per representative figure. The 1990 census showed a population of 245,845 for Rockingham County. Dividing that number by 2773.13 yielded 88.65 as the optimal number of representatives for the county. Given the impossibility of fractional representatives, the legislature apportioned eighty-eight representatives to Rockingham County. We note that the plaintiffs do not question the propriety of "rounding down" this fractional number in the apportionment plan. The 1990 census showed a combined population of 26,915 for Portsmouth and Newington. Dividing that number by 2773.13 yielded 9.71 as the optimal number of representatives for Portsmouth/Newington. Finally, the 1990 census showed a combined population of 34,746 for Salem and Windham. Dividing that number by 2773.13 yielded 12.53 as the optimal number of representatives for Salem/Windham. Again faced with the impossibility of fractional representatives and limited to eighty-eight representatives for Rockingham County, the legislature "rounded down" the figure for Portsmouth/Newington, "rounded up" the figure for Salem/Windham, and apportioned nine and thirteen representatives respectively.

The plaintiffs argue that the apportionment should have been ten and twelve representatives respectively, and contend that the actual apportionment was based on a reduction in the census figures for Portsmouth/Newington by the legislature. The alleged reduction stemmed from a presumed population drop in the Portsmouth/Newington area due to the closing of Pease Air Force Base, subsequent to the 1990 census. The plaintiffs argue that this alleged reduction was impermissible because part II, article 9 of our Constitution requires that apportionment be based on the last general census, and the legislature failed to statutorily adjust the census figures, as required by part II, article 9-a.

Our State Constitution establishes only one yardstick as a legislative guide in making an apportionment. That yardstick is "the last general census of the inhabitants of the state taken by authority of the United States or of this state." N.H. CONST. pt. II, art. 9; *Opinion of the Justices*, 105 N.H. 125, 128, 193 A.2d 880, 881–82 (1963).

Our review of the stipulated record found no adjustment of the census figures by the legislature. The record is replete with the legislature's acknowledgement of the constitutional mandate that apportionment be based on the census figures. The record does detail the legislature's discussion of a possible population loss in Portsmouth/Newington due to the closing of the air base. At oral argument, the plaintiffs conceded that population trend was one of several factors that political decision-makers can legitimately consider in allocating fractional seats. We find that it was simply one factor considered by the legislature in deciding whether to "round up" or "round down" the optimal, but impossible, fractional representative numbers for the districts involved. We will not deny the legislature their own common sense in deciding which option to choose. No census numbers were adjusted or altered in any way, and the provisions of part II, article 9-a were not implicated. Accordingly, we find that there was no error on the part of the trial court and affirm.

*Affirmed.*

All concurred.